UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

KEVIN GUY

CASE NO. 8:13-CR-010-T-27TBM
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C) - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy - 18 U.S.C. § 371)

### Introduction

At all times material to this Information:

1. HSBC Mortgage Services, Inc. ("HSBC Mortgage Services") was a Delaware corporation engaged in the business of acquiring and servicing mortgage loans. HSBC Mortgage Services maintained a service center for mortgages in Brandon, Hillsborough County, Florida.

2. HSBC Finance Corporation ("HSBC Finance") was a Delaware corporation that provided, through its subsidiaries, middle-market consumers with various types of loan products in the United States. HSBC Mortgage Services was a wholly-owned subsidiary of HSBC Finance.

3. HSBC Bank USA, National Association ("HSBC Bank") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

4. HSBC Bank, HSBC Finance, and HSBC Mortgage Services were affiliated subsidiaries of HSBC North America Holdings, Inc.

5. KEVIN GUY was a resident of Hillsborough County, Florida, and was married to Michelle Guy.

6. Between February 2001 and August 2011, Michelle Guy was employed by HSBC Mortgage Services in various administrative and service positions.

7. HSBC Mortgage Services established and maintained an employee Recognition Program. The Recognition Program offered economic rewards to employees for positive performance. There were essentially three different types of awards available through the Recognition Program: (1) vouchers, (2) "HSBC Cash", and (3) gift cards and gift checks. Vouchers consisted of certificates in certain dollar amounts that could be used by employees to order gift cards on the Internet or via facsimile. HSBC Cash was pseudo cash that could be used by employees to order gift cards from approved vendors. Gift cards and gift checks were ordered from approved vendors by a designated HSBC Mortgage Services employee who then distributed the gift cards and gift checks to selected employees. The divisions where Michelle Guy worked participated in the Recognition Program by providing employees with HSBC Cash, not gift card and gift checks.

8. American Express ("AMEX") gift cards were pre-paid payment cards issued in certain dollar amounts, including $500 denominations. AMEX gift cards functioned much like a bank debit card and could be used at any business in the United States that accepted charge cards and credit cards issued by the American Express Company.

9. AMEX gift cheques were pre-funded checks that functioned similar to cashier's checks or money orders in that they could be used like cash to make purchases or deposited into a bank account. AMEX gift cheques were offered in various amounts, including $100 denominations.

10. Williamsburg Travel Management - American Express ("Williamsburg Travel") was a privately-held group of travel agencies affiliated with the American Express Company and headquartered in Marietta, Georgia. Williamsburg Travel maintained an office in Tampa, Florida. Although Williamsburg Travel was primarily involved in the business of providing travel services, it also sold AMEX gift cards and AMEX gift cheques.

11. American Express Travel Related Services Company, Inc. ("AMEX TRS") was a New York corporation with its principal place of business in New York, New York. AMEX TRS also maintained an office in Atlanta, Georgia. AMEX TRS was a travel agency providing financial and travel related services to consumers and companies. AMEX TRS was also engaged in the business of selling AMEX gift cards and AMEX gift cheques.

12. Altour International Inc. ("Altour") was a Delaware corporation with its principal place of business in New York, New York. On or about January 1, 2010, Altour purchased AMEX TRS's office located in Atlanta, Georgia. Like AMEX TRS, Altour was engaged in the business of selling AMEX gift cards and AMEX gift checks.

13. Incentives, Inc. ("Incentives") was an Illinois corporation with its principal place of business in Chicago, Illinois. Incentives sold pre-paid gift cards from various retail stores, including: Nieman Marcus, Nordstrom, Banana Republic, Wal*Mart, Best

Buy, Toys R' Us, Sports Authority, Foot Locker, Dillard's, and Target (hereinafter referred to as "store gift cards"). These store gift cards could be purchased in various dollar amounts.

14. Between January 2007 and July 2011, Michelle Guy, encouraged by KEVIN GUY, ordered over $2,000,000.00 in AMEX gift cards, AMEX gift cheques, and store gift cards (collectively referred to herein as "gift cards and gift checks") from Williamsburg Travel, AMEX TRS, Altour, and Incentives (collectively referred to herein as the "vendors"). Michelle Guy misrepresented to these vendors that she was ordering gift cards and gift checks on behalf of HSBC Mortgage Services, when in fact, none of these orders were authorized by HSBC Mortgage Services. Rather, Michelle Guy ordered millions of dollars in gift cards and gift checks for her own personal enrichment and that of her husband, Kevin Guy.

15. Each time Michelle Guy placed an order for gift cards and gift checks, the respective vendor would send an invoice to HSBC Mortgage Services to obtain payment for the merchandise. Michelle Guy forged the signature of several supervisors to falsify the approval of these invoices. From January 2007 through December 2010, HSBC Finance funds were used to pay vendors for the gift cards and gift checks ordered by Michelle Guy. Beginning in January 2011, however, HSBC Bank funds were used to pay vendors for the gift cards and gift checks ordered by Michelle Guy.

## B. <u>The Conspiracy</u>

16. Beginning on an unknown date, but at least as early as in or about January 2007, and continuing through in or about November 2011, in the Middle District of Florida and elsewhere, the defendant,

KEVIN GUY,

did knowingly and willfully combine, conspire, confederate, and agree with other individuals both known and unknown, including Michelle Guy, to commit certain offenses, that is:

    a. to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice to defraud, which affected a financial institution, in violation of Title 18, United States Code, Section 1341 ("Mail Fraud");

    b. to knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, which affected a financial institution, in violation of Title 18, United States Code, Section 1343 ("Wire Fraud"); and

c.  to knowingly engage and attempt to engage in monetary transactions, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1957 ("Money Laundering").

### C. Manner and Means of the Conspiracy

17. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

a.  It was a part of the conspiracy that the conspirators would and did seek to obtain millions of dollars in gift cards and gift checks to which they were not entitled;

b.  It was a further part of the conspiracy that a conspirator would and did use interstate email and telephone communications to order hundreds of gift cards and gift checks without authorization from HSBC Mortgage Services;

c.  It was a further part of the conspiracy that a conspirator would and did forge the signatures of several supervisors at HSBC Mortgage Services to falsely approve invoices seeking payment for the gift cards and gift checks;

d.  It was a further part of the conspiracy that a conspirator would and did submit these falsely-approved invoices to the accounting department to induce payment;

e.  It was a further part of the conspiracy that, beginning in January 2011, conspirators would and did cause HSBC Bank, an FDIC-insured financial institution, to pay for these gift cards and gift checks with bank funds;

f.  It was a further part of the conspiracy that a conspirator would and did cause the vendors to mail gift cards and gift checks, via Federal Express and DHL, to Michelle Guy's office and to the personal residences of KEVIN GUY and Michelle Guy, which were both located in Hillsborough County, Florida;

g.  It was a further part of the conspiracy that conspirators would and did maintain bank accounts for depositing fraud proceeds;

h.  It was a further part of the conspiracy that conspirators would and did endorse and deposit hundreds of thousands of dollars in fraudulently-obtained AMEX gift cheques into Bank of America account x9188, held in the name of KEVIN GUY and Michelle Guy;

i.  It was a further part of the conspiracy that conspirators would and did withdraw fraud proceeds from Bank of America account x9188;

j.  It was a further part of the conspiracy that the conspirators would and did use fraudulently-obtained gift cards and gift checks to spend lavishly on themselves for such things as luxury automobiles, limousine rentals, designer clothing, high-end purses, cosmetic surgery, fancy electronic devices and appliances, expensive jewelry, and to otherwise satisfy personal expenses;

k.  It was a further part of the conspiracy that the conspirators would and did recruit other persons to cash fraudulently-obtained AMEX gift cheques; and

l.  It was a further part of the conspiracy that conspirators would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the conspiracy and the purpose of those acts.

### D. Overt Acts

18. In furtherance of the conspiracy and to effectuate the objects thereof, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

    a. On or about the dates set forth below, each of which constitutes a separate overt act, Michelle Guy ordered, without authorization from HSBC Mortgage Services, gift cards and gift checks from the following vendors:

| DATE ORDERED | VENDOR | VALUE OF CARDS/CHECKS |
|---|---|---|
| 1/30/2007 | Williamsburg Travel | $6,150.00 |
| 4/16/2007 | Williamsburg Travel | $6,150.00 |
| 5/8/2007 | Williamsburg Travel | $5,082.25 |
| 5/31/2007 | Williamsburg Travel | $2,015.80 |
| 7/30/2007 | Williamsburg Travel | $4,074.35 |
| 8/7/2007 | Williamsburg Travel | $4,612.50 |
| 8/22/2007 | Williamsburg Travel | $3,587.50 |
| 8/28/2007 | Williamsburg Travel | $4,612.50 |
| 9/21/2007 | Williamsburg Travel | $2,519.75 |
| 9/21/2007 | Williamsburg Travel | $4,920.00 |
| 10/10/2007 | Williamsburg Travel | $4,612.50 |
| 10/10/2007 | Williamsburg Travel | $4,535.55 |
| 10/22/2007 | Williamsburg Travel | $4,535.55 |
| 10/22/2007 | Williamsburg Travel | $4,920.00 |
| 10/29/2007 | Williamsburg Travel | $4,612.50 |
| 11/1/2007 | Williamsburg Travel | $4,612.50 |
| 11/1/2007 | Williamsburg Travel | $4,535.55 |

| DATE ORDERED | VENDOR | VALUE OF CARDS/CHECKS |
| --- | --- | --- |
| 11/6/2007 | Williamsburg Travel | $4,535.55 |
| 11/6/2007 | Williamsburg Travel | $4,920.00 |
| 11/27/2007 | Williamsburg Travel | $4,612.50 |
| 12/10/2007 | Williamsburg Travel | $12,214.50 |
| 12/29/2007 | Williamsburg Travel | $12,598.75 |
| 12/29/2007 | Williamsburg Travel | $15,375.00 |
| 1/9/2008 | Williamsburg Travel | $12,727.00 |
| 2/4/2008 | Williamsburg Travel | $12,812.50 |
| 3/10/2008 | Williamsburg Travel | $15,375.00 |
| 3/21/2008 | Williamsburg Travel | $17,809.25 |
| 3/28/2008 | Williamsburg Travel | $15,289.50 |
| 4/14/2008 | Williamsburg Travel | $10,250.00 |
| 5/6/2008 | Williamsburg Travel | $10,250.00 |
| 5/19/2008 | Williamsburg Travel | $7,644.75 |
| 6/3/2008 | Williamsburg Travel | $10,207.25 |
| 6/9/2008 | Williamsburg Travel | $10,250.00 |
| 7/2/2008 | AMEX TRS | $10,250.00 |
| 7/21/2008 | AMEX TRS | $12,812.50 |
| 7/30/2008 | AMEX TRS | $5,039.50 |
| 8/12/2008 | AMEX TRS | $12,300.00 |
| 8/14/2008 | AMEX TRS | $7,604.25 |
| 8/28/2008 | AMEX TRS | $10,250.00 |
| 9/18/2008 | AMEX TRS | $5,069.50 |
| 9/18/2008 | AMEX TRS | $10,250.00 |
| 10/6/2008 | AMEX TRS | $10,250.00 |
| 10/27/2008 | AMEX TRS | $15,319.50 |

| DATE ORDERED | VENDOR | VALUE OF CARDS/CHECKS |
| --- | --- | --- |
| 11/12/2008 | AMEX TRS | $15,375.00 |
| 11/25/2008 | AMEX TRS | $22,979.25 |
| 12/16/2008 | AMEX TRS | $10,250.00 |
| 1/14/2009 | AMEX TRS | $12,784.75 |
| 1/26/2009 | AMEX TRS | $7,604.25 |
| 2/10/2009 | AMEX TRS | $12,812.50 |
| 3/31/2009 | AMEX TRS | $17,882.00 |
| 4/16/2009 | AMEX TRS | $7,604.25 |
| 5/4/2009 | AMEX TRS | $12,812.50 |
| 5/18/2009 | AMEX TRS | $7,604.25 |
| 5/27/2009 | AMEX TRS | $12,812.50 |
| 6/15/2009 | AMEX TRS | $7,604.25 |
| 6/22/2009 | AMEX TRS | $12,812.50 |
| 7/7/2009 | AMEX TRS | $7,604.25 |
| 7/14/2009 | AMEX TRS | $15,375.00 |
| 7/29/2009 | Incentives | $14,514.50 |
| 7/29/2009 | Incentives | $15,831.00 |
| 7/31/2009 | AMEX TRS | $20,416.75 |
| 8/5/2009 | Incentives | $5,127.74 |
| 8/21/2009 | AMEX TRS | $20,416.75 |
| 9/14/2009 | AMEX TRS | $20,416.75 |
| 9/29/2009 | Incentives | $2,271.65 |
| 10/1/2009 | AMEX TRS | $20,416.45 |
| 10/1/2009 | Incentives | $13,200.00 |
| 10/1/2009 | Incentives | $14,300.00 |
| 11/5/2009 | Incentives | $12,100.00 |

| DATE ORDERED | VENDOR | VALUE OF CARDS/CHECKS |
|---|---|---|
| 11/5/2009 | Incentives | $17,864.00 |
| 11/5/2009 | Incentives | $11,528.65 |
| 11/30/2009 | AMEX TRS | $33,000.00 |
| 12/30/2009 | Incentives | $39,600.00 |
| 12/30/2009 | Incentives | $9,900.00 |
| 1/4/2010 | AMEX TRS | $20,416.75 |
| 1/26/2010 | Altour | $20,371.75 |
| 2/19/2010 | Altour | $22,934.25 |
| 3/17/2010 | Incentives | $6,838.28 |
| 3/23/2010 | Incentives | $20,900.00 |
| 3/25/2010 | AMEX TRS | $22,934.25 |
| 4/1/2010 | Incentives | $17,600.00 |
| 4/7/2010 | AMEX TRS | $28,074.25 |
| 4/21/2010 | Altour | $28,074.25 |
| 5/5/2010 | Altour | $28,074.25 |
| 6/3/2010 | Altour | $28,074.25 |
| 7/6/2010 | Altour | $28,074.25 |
| 7/21/2010 | Incentives | $44,660.00 |
| 7/23/2010 | Altour | $41,000.00 |
| 8/11/2010 | Altour | $40,698.00 |
| 9/13/2010 | Altour | $41,000.00 |
| 9/13/2010 | Incentives | $44,000.00 |
| 9/28/2010 | Altour | $20,198.00 |
| 10/25/2010 | Altour | $41,000.00 |
| 11/11/2010 | Altour | $40,698.00 |
| 11/15/2010 | Incentives | $50,600.00 |

| DATE ORDERED | VENDOR | VALUE OF CARDS/CHECKS |
|---|---|---|
| 12/6/2010 | Altour | $51,099.00 |
| 1/10/2011 | Altour | $51,099.00 |
| 1/20/2011 | Incentives | $44,000.00 |
| 2/4/2011 | Altour | $51,319.00 |
| 2/17/2011 | Altour | $20,419.00 |
| 3/2/2011 | Altour | $51,319.00 |
| 4/1/2011 | Altour | $51,319.00 |
| 4/7/2011 | Incentives | $46,200.00 |
| 5/3/2011 | Altour | $51,319.00 |
| 5/20/2011 | Altour | $51,319.00 |
| 6/15/2011 | Altour | $51,319.00 |
| 7/6/2011 | Altour | $53,848.75 |
| 7/6/2011 | Incentives | $42,350.00 |
| 7/22/2011 | Incentives | $46,200.00 |
| 7/28/2011 | Altour | $56,650.00 |
| 7/28/2011 | Altour | $53,848.75 |

      b.     On or about August 23, 2010, KEVIN GUY withdrew approximately $11,255.00 in U.S. currency from Bank of America account x9188.

      c.     On or about January 24, 2011, KEVIN GUY withdrew approximately $12,809.00 in U.S. currency from Bank of America account x9188.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

1.   The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.   Upon conviction of the violations alleged in Count One of this Information, the defendant,

KEVIN GUY,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy to commit mail and wire fraud. The property to be forfeited includes, but is not limited to, the following:

(a)   A forfeiture money judgment in the amount of $2,205,420.82, which represents the amount of proceeds traceable to the conspiracy charged in Count One of the Information, for which the defendant shall be held jointly and severally liable with his wife and co-conspirator, Michelle Guy; and

(b)   The following items that were seized from the defendant and his co-conspirator, Michelle Guy:

| Seizure Date | Item Description |
|---|---|
| 9/12/2011 | 1 Gucci purse |
| 9/12/2011 | 1 Gucci wallet |
| 9/12/2011 | 1 Louis Vuitton small bag |
| 9/12/2011 | 1 Louis Vuitton organizer |
| 9/12/2011 | 1 Louis Vuitton make-up bag |

| Seizure Date | Item Description |
|---|---|
| 9/12/2011 | 1 pair of Prada sunglasses with case |
| 9/12/2011 | 1 pair of Gucci sunglasses with case |
| 9/12/2011 | 1 Louis Vuitton laptop bag |
| 9/12/2011 | 1 Small pink card holder |
| 9/12/2011 | Miscellaneous clothing and cosmetics |
| 11/7/2011 | 70 $100.00 American Express gift cheques |
| 11/14/2011 | 379 $100.00 American Express gift cards |
| 11/14/2011 | 11 $500.00 American Express gift cards |
| 11/14/2011 | 1 polka dot bag |
| 12/20/2011 | 1 Prada sunglass case |
| 12/20/2011 | 1 $500.00 American Express gift card |
| 12/20/2011 | 1 Beats by Dr. Dre Monster headphones |
| 12/20/2011 | 1 Apple Macbook laptop, serial number WQ9240CK3GU |
| 12/20/2011 | 1 Apple iPad, 64GB, white, serial number DLXFJ10UDKPN |
| 12/20/2011 | 1 Gucci iPad Case |
| 12/20/2011 | 1 Apple iPad, 32GB, black, serial number V5038K4PETU |
| 12/20/2011 | 1 Fossil iPad case |
| 12/20/2011 | 1 Sony VAIO laptop, serial number 5.40324E+14 |
| 12/20/2011 | 1 Apple iMac, serial number W81051VJDB6 |
| 12/20/2011 | 1 Apple iMac, serial number W893815A5PE |
| 12/20/2011 | 1 Apple wireless keyboard and mouse |
| 12/20/2011 | 1 55" Samsung flat screen TV, serial number Z1YM3CJB202966W |
| 12/20/2011 | 1 XBOX 360 with controllers, serial number 43691503108 |
| 12/20/2011 | 9 pairs of True Religion jeans |
| 12/20/2011 | 3 pairs of True Religion shorts |
| 12/20/2011 | 13 Louis Vuitton handbags |

| Seizure Date | Item Description |
|---|---|
| 12/20/2011 | 1 pair of Prada sunglasses in case |
| 12/20/2011 | 5 pairs of Gucci sunglasses in case |
| 12/20/2011 | 7 pairs of Louis Vuitton sunglasses in case |
| 12/20/2011 | 1 pair of Tom Ford sunglasses in case |
| 12/20/2011 | 3 pairs of Roberto Cavali sunglasses in case |
| 12/20/2011 | 1 pair of Oakley sunglasses in case |
| 12/20/2011 | 1 Samsung flat screen TV, serial number 21SSCQZ60002483 |
| 12/20/2011 | 1 pink Nintendo DSI |
| 12/20/2011 | 1 pair of Louis Vuitton sunglasses in case |
| 12/20/2011 | 1 Louis Vuitton purse |
| 12/20/2011 | 20 Vera Bradley bags |
| 12/20/2011 | 1 pair of Black Prada leather boots with broken heel |
| 12/20/2011 | 1 pair of Tory Burch sandals |
| 12/20/2011 | 1 yellow Juicy Couture jacket |
| 12/20/2011 | 1 blue Juicy Couture jacket |
| 12/20/2011 | 1 Tory Burch Zipper bag |
| 12/20/2011 | 16 Gucci purses |
| 12/20/2011 | 1 Tory Burch purse |
| 12/20/2011 | 1 Marc Jacobs purse |
| 12/20/2011 | 1 Chanel purse |
| 12/20/2011 | 1 Coach purse |
| 12/20/2011 | 1 Bose speaker system |
| 12/20/2011 | 16 pairs of UGG shoes |
| 12/20/2011 | 1 Samsung flat screen TV, serial number Z2543CKZB00886F |
| 12/20/2011 | 1 Vera Bradley bag |
| 12/20/2011 | 1 pair of UGG shoes |

| Seizure Date | Item Description |
|---|---|
| 12/20/2011 | 2 Juicy Couture bags |
| 12/20/2011 | 15 pairs of Chanel shoes |
| 12/20/2011 | 10 pairs of Gucci shoes |
| 12/20/2011 | 49 shirts |
| 12/20/2011 | 44 pairs of pants |
| 12/20/2011 | 2 Louis Vuitton belts |
| 12/20/2011 | 1 Insignia Blu Ray Player, serial number 10C31104931 |
| 12/20/2011 | 1 Samsung Blu Ray Player, serial number OZRE6VCQA07761W |
| 12/20/2011 | 1 Beats by Dr. Dre iPod dock |
| 12/20/2011 | 3 TV remote controls |
| 12/20/2011 | 1 pair of Tory Burch shoes |
| 12/20/2011 | 10 pairs of Christian Louboutin shoes |
| 12/20/2011 | 4 pairs of Vera Wang shoes |
| 12/20/2011 | 1 pair of Moschino shoes |
| 12/20/2011 | 1 pair of Gastone Lucioli shoes |
| 12/20/2011 | 1 pair of Kate Spade shoes |
| 12/20/2011 | 2 pairs of Marc Jacobs shoes |
| 12/20/2011 | 15 pairs of miscellaneous designer shoes |
| 12/20/2011 | 3 Gucci belts |
| 12/20/2011 | 9 pairs of Louis Vuitton shoes |
| 12/20/2011 | 10 pairs of Coach shoes |
| 12/20/2011 | 4 pairs of Giuseppe shoes |
| 12/20/2011 | 26 pairs of miscellaneous designer shoes |
| 12/20/2011 | 1 Louis Vuitton purse |
| 12/20/2011 | 1 Louis Vuitton keychain |
| 12/20/2011 | 1 True Religion hoody |

| Seizure Date | Item Description |
|---|---|
| 12/20/2011 | 8 pairs of True Religion jeans/shorts |
| 12/20/2011 | 4 pairs of Joe's jeans |
| 12/20/2011 | 2 pairs of miscellaneous designer boots |
| 12/20/2011 | 2 pairs of miscellaneous designer shoes |
| 12/20/2011 | 1 Samsung Blu Ray Player |
| 12/20/2011 | 2 pairs of Beats by Dr. Dre Headphones |
| 12/20/2011 | 5 Nintendo DSI Game Systems |
| 12/20/2011 | 3 Nintendo DS case with games |
| 12/20/2011 | 12 miscellaneous video games |
| 12/20/2011 | 3 Coach purses |
| 12/20/2011 | 1 Panasonic TV with mount, serial number TBM2AC487 |
| 12/20/2011 | 4 Vera Bradley bags |
| 12/20/2011 | 1 white Nintendo DS Game System |
| 12/20/2011 | 1 pink Nintendo DS Game System |
| 12/20/2011 | 2 Nintendo DS Game cases |
| 12/20/2011 | 3 miscellaneous Nintendo DS games |
| 12/20/2011 | 2 Playstation controllers |
| 12/20/2011 | 1 pair of 3D glasses |
| 12/20/2011 | 2 remote controllers |
| 12/20/2011 | various cords |
| 12/20/2011 | 1 Samsung refrigerator, serial number 181843CB300156X |
| 12/20/2011 | 18 pairs of miscellaneous designer jeans |
| 12/20/2011 | 7 pairs of miscellaneous designer scarves |
| 12/20/2011 | 1 Gucci wallet |
| 12/20/2011 | 1 Gucci checkbook |
| 12/20/2011 | 1 Marc Jacobs satin bag |

| Seizure Date | Item Description |
|---|---|
| 12/20/2011 | 23 pairs of True Religion jeans |
| 12/20/2011 | 4 True Religion blouses |
| 12/20/2011 | 3 True Religion hats |
| 12/20/2011 | 1 Bose speaker system, serial number 049994982560220AC |
| 12/20/2011 | 1 True Religion hat |
| 12/20/2011 | 2 True Religion journals |
| 12/20/2011 | 1 Nike shirt with Nordstrom tag |
| 12/20/2011 | 1 pair of Readers in case with Nordstrom tag |
| 12/20/2011 | 3 Burberry jackets |
| 12/20/2011 | 4 Tory Burch blouses |
| 12/20/2011 | 1 Marc Jacobs blouse |
| 12/20/2011 | 2 Michael Kors blouses |
| 12/20/2011 | 1 Michael Kors watch |
| 12/20/2011 | 1 ladies Bulova watch |
| 12/20/2011 | 1 ladies Coach watch |
| 12/20/2011 | 1 David Yurman black onyx silver bangle with pave diamonds |
| 12/20/2011 | 1 David Yurman silver cable buckle bangle with pave diamonds |

The net proceeds from the forfeiture of the items listed above in paragraph 2(b) shall be credited towards the satisfaction of the forfeiture money judgment described above in paragraph 2(a).

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

ROBERT E. O'NEILL
United States Attorney

By: _____
SIMON GAUGUSH
Assistant United States Attorney

By: _____
ANITA CREAM
Assistant United States Attorney
Chief, Asset Recovery and Victim Rights

By: _____
ROBERT MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

19